IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LOUIS NAES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.  4:19-CV-2132 |
| ) | |
| THE CITY OF ST. LOUIS, MISSOURI, ) | JURY TRIAL DEMANDED |
| and ) | |
| ) | |
| MAJOR ANGELA COONCE, in her ) | |
| official and individual capacities, and ) | |
| ) | |
| CHIEF JOHN HAYDEN, in his official ) | |
| and individual capacities, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

## PARTIES & JURISDICTION

1. At all times relevant herein, Plaintiff Louis Naes, (hereinafter "Naes"), was and is a resident of St. Louis County, Missouri and a citizen of the United States of America. He is employed by the City of St. Louis through the St. Louis Police Department.

2. At all times relevant herein, Defendant City of St. Louis is a Charter City organized and existing under the laws of the State of Missouri, located in the Eastern Division of the United States District Court for the Eastern District of Missouri.

3. At all times relevant herein, Defendant Major Angela Coonce (hereinafter "Coonce") was and is a major in the St. Louis Police Department.  She is sued in both her individual and official capacities.

4. Prior to the filing of this lawsuit, a City of St. Louis jury entered a judgment against Coonce in 2014 for $175,000.00 when she retaliated against an employee of the Department. Ultimately, the City paid over $350,000 as a result of Coonce's misconduct.

5. Upon information and belief, Coonce was not disciplined when her unconstitutional conduct cost City taxpayers over $350,000.00. Instead, she was promoted from the rank of lieutenant to the rank of captain within six (6) months of the judgment being entered against her, showing that the City of St. Louis not only condones but rewards command rank officers who engage in illegal employment actions.

6. At all times relevant herein, Defendant Chief John Hayden (hereinafter "Hayden") was and is the Chief of Police and Police Commissioner of the St. Louis Police Department.

7. The adverse employment action Naes suffered as set forth in more detail below occurred in the City of St. Louis, State of Missouri, within the Eastern Division of the Eastern District of Missouri.

8. This action is brought pursuant to 42 U.S.C. §2000(e) *et seq.*, 42 U.S.C. § 1983, the 14th Amendment to the United States Constitution, and § 213.010 *et seq*. R.S.Mo. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Plaintiff further invokes the supplemental jurisdiction of this Court to hear and decide claims arising under state law pursuant to 28 U.S.C. § 1367. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

9. Plaintiff demands a trial by jury pursuant to Fed. R. Civ. P. 38(b).

**FACTS COMMON TO ALL COUNTS**

10. Naes has been employed as a City of St. Louis police officer since 2003.

11. In October 2012, Naes was assigned as a detective in problem properties. As part

2

of his job duties, Naes was also assigned to the Animal Abuse Task Force.

12. As part of Naes' job duties with the Animal Abuse Task Force, he was required to work with Stray Rescue of St. Louis and its founder, Randy Grim.

13. Naes and his partner attempted to investigate Grim when they learned of alleged illegal conduct, to include complaints made by his own staff, to include but not necessarily be limited to trespassing, theft, misappropriation of funds, and drugs.

14. When illegal conduct involving Grim was reported to Naes and his partner, command rank officers in the Department protected Grim by ordering them to do nothing. By way of example, but not exhaustive, when a Stray Rescue manager told Naes and his partner that Grim was dealing drugs, the purported investigation was assigned to the Intelligence Division, led by Defendant Coonce. When the St. Louis Post Dispatch made a Sunshine Law request for Stray Rescue records, a commander ordered Naes and his partner to exonerate Grim on the drug-related allegation, even though they had conducted no investigation.

15. Naes and his partner also investigated Grim when he stole a dog from its owner's backyard, falsely claiming that the dog had been abused, so that Grim could post the animal on Stray Rescue's website for adoption/sale.

16. During former Chief D. Samuel Dotson's (hereinafter "Dotson") tenure as Chief of Police, the City and Department were more interested in protecting Grim than enforcing the laws of the State of Missouri to the extent that Dotson told Naes and his partner that they either had to play by Grim's rules or they would be moved out of the detective bureau. As a result, Naes and his partner began writing memos about their interactions with Stray Rescue, instead of preparing police reports, so that they could not be accused of failing to perform their duties when they did nothing about alleged criminal activity known to them.

17. Grim told Naes and his partner that when Angela (Defendant Coonce) was in charge, he would have the last laugh.

18. Naes and his partner documented inappropriate comments Grim made to them based upon their sexual orientation (heterosexual). By way of example, but not exhaustive, Grim frequently told both of them things would be better if they were gay. Grim asked Naes' partner if it was true what they say about black men, and also told Naes' partner that if he (the partner) were gay, Grim would be his boyfriend.

19. Coonce and Grim are both gay. Naes and his partner are both heterosexual.

20. Coonce is associated with a group of females within the Department known as "the Lesbian Mafia," whom Coonce is known to advance not based upon their knowledge, skills, and abilities but based upon their gender and sexual orientation. By way of example, but not exhaustive of the preferential treatment Coonce gives to female members of "the Lesbian Mafia," a female officer was detached to the Intelligence Division while Defendant Coonce was in charge of it after being with the Department for approximately one year and then later transferred to Intelligence, while other officers of the Department have to work the streets and be assigned to a bureau before being allowed to work in Intelligence.

21. Naes and his partner also documented racist comments made by Grim, who believed he could do anything he wanted in the northside of the City of St. Louis because it was an African American community that no one cared about. By way of example, Grim frequently referred to the African American residents who complained about him trespassing in their yards by the word "n-g-er."

22. On or about April 12, 2018 Coonce was promoted to the rank of major and placed in charge of the Investigations Unit.

23. On or about April 24, 2018, at the direction of Coonce, Naes was told that he could not leave headquarters, even for lunch, and that he could not continue working on investigations he had been working on, to include but not be limited to a counterfeit wine investigation and a dog fighting investigation, both of which were compromised by the actions of Coonce.

24. On April 27, 2018, Coonce had Naes removed as a detective in problem properties and assigned a member of "the Lesbian Mafia" to replace him, even though this officer had no experience or training in handling dog investigations.  Even when a Missouri State Highway Patrol trooper and representative of the ASPCA requested that Naes be permitted to continue working on the dog fighting investigation because of his knowledge and experience compared to the female officer, this request was denied.

25. Before Defendant Coonce was assigned to the Investigations Unit, Naes' sergeant recommended him for a Chief's letter related to a dogfighting investigation.  After Defendant Coonce was assigned to Investigations, Naes could do nothing right in an effort to get rid of him.

26. On or about May 2, 2018, Naes complained about this illegal discrimination and other misconduct to Defendant Hayden.

27. Two days later, on May 4, 2018, an Employee Misconduct Report was issued to Naes in an effort to intimidate him and silence him about the illegal discrimination he suffered.

28. As of the date of the filing of this Complaint, the Employee Misconduct Report remains pending showing that it has nothing to do with alleged misconduct, but was made to intimidate Naes into silence about the illegal discrimination he has suffered.

29. On May 18, 2018, Naes filed a timely Charge of Discrimination with the EEOC and Missouri Commission on Human Rights.

5

30. Naes was issued a Right to Sue Letter by the EEOC on April 30, 2019.  He was issued a Right to Sue Letter by the MCHR on July 23, 2019.

31. As a direct and proximate result of the discriminatory acts of the Defendants as alleged herein, Naes has lost over $10,000.00 in overtime compensation.

32. As a direct and proximate result of the acts of the Defendants as alleged herein, Naes has suffered and will continue to suffer emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation.

## COUNT I
## PLAINTIFF'S TITLE VII AND MHRA CLAIMS
## BASED UPON GENDER DISCRIMINATION

For Count I of Plaintiff's cause of action against Defendant City of St. Louis, Plaintiff states as follows:

33. Naes alleges and incorporates by reference as if fully set forth herein all previous allegations set forth in his Complaint.

34. Naes suffered an adverse employment action when he was removed as a detective because of his gender.

35. Any purported reasons that Defendant might offer for this action is nothing but pretext to conceal this Defendant's illegal discrimination against Naes.

36. The actions and/or practices complained of herein were in violation of Naes' rights secured by 42 U.S.C. §2000(e) *et seq.* and R.S.Mo. §213.010 *et seq.*

37. As a direct and proximate result of the acts of the Defendant as alleged herein, Naes was removed as a detective, resulting in lost overtime wages.

38. As a direct and proximate result of the acts of the Defendant as alleged herein,

6

Naes has suffered and will continue to suffer emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation.

39. Defendant's conduct was outrageous because of its evil motive or reckless indifference to the rights of others, making an award of punitive damages against it appropriate under the Missouri Human Rights Act to punish it and deter it from like conduct in the future.

WHEREFORE, Plaintiff Louis Naes prays this Court enter judgment in his favor and against the Defendant and thereafter order Defendant to make him whole by awarding him damages for his lost wages, as well as for his emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, stress, and loss of reputation.  Plaintiff further requests that this Court award him punitive damages against this Defendant in such sum as will serve to punish it and deter it and others from like conduct in the future, award Plaintiff his reasonable costs and attorneys' fees, and such other and further relief as may appear to the Court to be equitable and just under the totality of the  circumstances.

## COUNT II
## VIOLATION OF PLAINTIFF'S RIGHT TO EQUAL PROTECTION COGNIZABLE UNDER 42 U.S.C. SECTION 1983

For Count II of Plaintiff's cause of action against all Defendants, Plaintiff states as follows:

40. Plaintiff incorporates by reference as if fully set forth herein all previous paragraphs of his Complaint.

41. Defendants, acting under color of state law, deliberately acted against Naes as set forth above because of his gender, male, causing him to be deprived of his rights secured by the Constitution and laws of the United States.

7

42. The actions, policies, and/or practices complained of herein were in violation of 42 U.S.C. §1983 in that they have denied Naes of his rights secured by Title VII of the Civil Rights Act of 1964, as well as equal protection of the law secured by the Fourteenth Amendment to the United States Constitution.

43. The actions complained of herein were taken by Defendant Coonce and protected by Defendant Hayden as part of a custom and practice on the part of command rank officers to illegally discriminate and/or retaliate against officers of the Department as part of a deliberate policy of discrimination.

44. As a direct and proximate result of the acts of the Defendants as alleged herein, Naes was wrongfully removed as a detective, resulting in lost overtime wages.

45. As a direct and proximate result of the acts of the Defendants as alleged herein, Naes has suffered and will continue to suffer emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation.

46. The conduct of the individual Defendants as set forth herein was wanton, willful, and showed a reckless indifference to Naes' constitutional and statutory rights as set forth above, justifying an award of punitive damages against these Defendants in their individual capacities to punish them and to deter them and others from the same or similar misconduct in the future.

WHEREFORE, Plaintiff Louis Naes prays this Court enter judgment in his favor and against the Defendants and thereafter order Defendants to make him whole by awarding him damages for his lost wages, as well as for his emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, stress, and loss of reputation.  Plaintiff further requests that this Court award him punitive damages against the

individual Defendants in their individual capacities in such sum as will serve to punish them and to deter them and others from like conduct in the future, award him his reasonable costs and attorneys' fees, and such other and further relief as may appear to the Court to be equitable and just under the totality of the circumstances.

## COUNT III
## FAILURE TO INSTRUCT, SUPERVISE, CONTROL AND DISCIPLINE DIRECTED AGAINST DEFENDANTS HAYDEN AND CITY OF ST. LOUIS UNDER 42 U.S.C. §1983

For Count III of Plaintiff's cause of action against Defendants City of St. Louis and John Hayden, Plaintiff states as follows:

47. Plaintiff alleges and incorporates by reference as if fully set out herein all preceding paragraphs of his Complaint.

48. The St. Louis Police Department has been under the control of the City of St. Louis since September 2013.

49. While the City and Department purportedly have policies and procedures prohibiting discrimination and/or retaliation, there exists within the City/Department customs, practices and usages that are so pervasive that they constitute the policies of these Defendants, that caused the violations of Plaintiff's constitutionally and federally protected rights as set forth above.

50. Instead of punishing illegal discrimination and/or retaliation when committed by command rank officers of the Department, the City and/or Chief of Police not only protect such misconduct but promote command rank officers when they engage in conduct that violates the constitution and laws of the United States.

51. By way of example but not exhaustive of this conduct:

    a. As set forth above, when Defendant Coonce engaged in unconstitutional

9

retaliation that cost the City over $350,000.00, upon information and belief, she was not disciplined. However, within six months of this misconduct, she was promoted.

  b. When a jury unanimously ordered the payment of $620,000.00 after Sgt. David Bonenberger was discriminated against by Lt. Col Reggie Harris and Lt. Michael Muxo, neither was disciplined, even though an Employee Misconduct Report was filed against them. They were not disciplined upon the advice of the City Counselor's Office, showing that the City is involved in the protection of those who engage in such misconduct.

  c. When Sgt. Bonenberger was retaliated against by Dotson, costing the City additional money, upon information and belief, Doston was not disciplined or even investigated as a result of his misconduct by the Department or City.

  d. Similarly, when Dotson discriminated against Michael Caruso by choosing a less qualified African American candidate for promotion even before the position was announced, costing the City additional money, upon information and belief, Doston was not disciplined or even investigated as a result of his misconduct by the Department or City.

  e. When Dotson discriminated against Capt. Ryan Cousins, costing the City additional money, the City's response was to change the rules of its Civil Service Commission to make it harder for employees who are victims of illegal discrimination to prove it.

52. Even though illegal discrimination and retaliation have cost the City at least 3 million dollars during the past several years, the City continues to protect command rank officers who engage in it instead of taking action to show that this misconduct will not be tolerated in its

police department.

53.     Hayden is the ultimate supervisory officer within the Department and his failure to affirmatively act in the face of the transgressions of which he knew or should have known, established the policies of the Department/City to condone or otherwise tolerate conduct that violates the constitutional or statutory rights of employees of the Department in general, particularly when the complaint is made against a command rank officer of the Department, and specifically the conduct described in this Complaint.  Alternatively, this Defendant has delegated and abrogated all supervisory power.  Had this Defendant acted affirmatively to properly train and supervise law enforcement personnel under his command or control and/or to properly discipline the law enforcement personnel under his control when they conduct themselves in ways that violate the constitutional and federal rights of others, Plaintiff's discrimination would not have occurred.

54.     In an effort to protect Coonce when she engaged in acts of illegal discrimination, knowing that she had previously engaged in conduct that a jury found violated the United States Constitution, Hayden took no action when he learned about the discrimination Naes suffered, other than to allow an Employee Misconduct Report to be filed against Naes to intimidate and silence Naes to prevent Hayden's own negligent training and supervision from being discovered and to protect himself and Defendant Coonce from the consequences of their illegal acts.

55.     Similarly, the City is the policy making body governing the law enforcement personnel described herein.  Its failure to affirmatively act in the face of multiple acts of illegal discrimination and/or retaliation that have cost the City millions of dollars establishes the policy of this Defendant to condone and otherwise tolerate conduct that violates the constitutional and federal rights of employees of the Department in general, particularly when these acts are

committed by command rank officers. Alternatively, this Defendant has delegated and abrogated all or part of its policymaking power. Had this Defendant affirmatively acted to properly train and/or supervise the law enforcement personnel under its control and/or to properly discipline the law enforcement personnel under its control when they conduct themselves in ways that violate the constitutionally and federally protected rights of others, the gender-based discrimination of Plaintiff would not have occurred.

56. These failures and refusals create a cognizable cause of action pursuant to 42 U.S.C. § 1983.

57. In their failures as above-described, these Defendants intentionally disregarded known facts or alternatively were deliberately indifferent to the risk of violating the federally established rights of others, of which they knew or should have known, and their culpability caused the violation of Naes' federally protected constitutional and statutory rights as set forth above.

58. As a direct and proximate result of the acts and/or omissions of these Defendants, Naes was wrongfully removed as a detective, resulting in lost overtime wages.

59. As a direct and proximate result of the acts and/or omissions of these Defendants, Naes has suffered and will continue to suffer emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation.

60. The conduct of Defendant Hayden as set forth herein was wanton, willful, and showed a reckless indifference to Naes' constitutional and statutory rights as set forth above, justifying an award of punitive damages against this Defendant in his individual capacity to punish him and to deter him and others from the same or similar misconduct in the future.

WHEREFORE, Plaintiff Louis Naes prays this Court enter judgment in his favor and against the Defendants and thereafter order Defendants to make him whole by awarding him damages for his lost wages, as well as for his emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, stress, and loss of reputation.  Plaintiff further requests that this Court award him punitive damages against Defendant Hayden in his individual capacity in such sum as will serve to punish him and to deter him and others from like conduct in the future, award Naes his reasonable costs and attorneys' fees, and such other and further relief as may appear to the Court to be equitable and just under the totality of the  circumstances.

Respectfully submitted,

**PLEBAN & PETRUSKA LAW, LLC**


By:         /s/ Lynette M. Petruska
Lynette M. Petruska, Bar No. 41212
lpetruska@plebanlaw.com
J.C. Pleban, MO Bar No. 63166
JC@plebanlaw.com
2010 South Big Bend Blvd.
St. Louis, MO  63117
(314) 645-6666 - Telephone
(314) 645-7376 - Facsimile

Attorneys for Plaintiff