UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LOUIS NAES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:19-cv-02132-SEP |
| ) | |
| THE CITY OF ST. LOUIS, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants City of St. Louis ("City"), Major Angela Coonce, and Chief John Hayden's (collectively, "Defendants") motions to dismiss.  Docs. [14], [16].  Both motions are fully briefed.  Docs. [14], [15], [16], [17], [22].[1]  For the reasons set forth below, both motions are granted in part and denied in part.

**Legal Standard**

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a complaint.  When considering a 12(b)(6) motion, the court assumes the factual allegations of a complaint are true and construes them in the non-movant's favor. *Neitzke v. Williams,* 490 U.S. 319, 326-27 (1989).

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  In *Bell Atlantic Corp. v. Twombly,* the Supreme Court clarified that Rule 8(a)(2) requires complaints to contain

---

[1] On March 30, 2020—after these motions were briefed—Plaintiff filed his Second Amended Complaint adding claims under the Missouri Human Rights Act in Counts II and III.  Doc. [28].  He could not have included the claims earlier because he was awaiting his Right to Sue letter from the Missouri Commission on Human Rights.  Doc. [29].  The parties requested that the Court apply previously filed motions to the Second Amended Complaint, *id.*, which request the Court granted on April 1, 2020.  Doc. [30].

"more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. 544, 555 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009). Specifically, to survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). The issue in considering such a motion is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. *See Twombly,* 550 U.S. at 556.

### Relevant Facts and Background[2]

Plaintiff Louis Naes, a male, has been employed as a police officer with the St. Louis Metropolitan Police Department ("SLMPD") since 2003. Doc. [28] ¶ 10. In October 2012, he was assigned as a detective to the problem properties unit, where he was assigned to the Animal Abuse Task Force. *Id.* ¶ 11. His duties involved working with Randy Grim, the founder of Stray Rescue of St. Louis. *Id.* ¶ 12. Naes and his partner tried to investigate Grim when they learned of alleged illegal conduct, as well as racist and sexual comments. *Id.* ¶¶ 13, 18, 21. When Grim learned of these investigations, he told Naes that when Defendant Coonce was in charge, he (Grim) would have the last laugh. *Id.* ¶ 17.

On April 12, 2018, Coonce was promoted to the rank of major and placed in charge of the Intelligence Unit. *Id.* ¶ 22. On April 24, 2018, at Coonce's direction, Naes was told that he was no longer allowed to leave headquarters and was not allowed to continue working on certain ongoing investigations. *Id.* ¶ 23. On April 27, 2018, Coonce had Naes removed as a detective in problem properties and replaced him with a new detective with no relevant experience or training

---

[2] The facts contained herein are taken from the allegations set out in Plaintiff's Second Amended Complaint (Doc. [28]). They are assumed to be true for the purpose of this Memorandum and Order. *See Iqbal,* 556 U.S. at 678-79; *Neitzke,* 490 U.S. at 326-27.

in dog investigations.  *Id.* ¶ 24.  Naes alleges that his replacement was a member of "the Lesbian Mafia," a group of homosexual females within the SLMPD whom Coonce advances based upon gender and sexual orientation rather than knowledge, skills, or abilities.  *Id.* ¶¶ 20, 24.

On May 2, 2018, Naes complained about this illegal discrimination and other alleged misconduct to Hayden.  *Id.* ¶ 26.  On May 4, 2018, an Employee Misconduct Report ("EMR") was filed against Naes, which Naes believes was an attempt to intimidate him and prevent him from speaking out about the discrimination he suffered.  *Id.* ¶ 27.  The EMR remained pending as of the date of filing of his amended complaint.  *Id.* ¶ 28.  On May 18, 2018, Naes filed a Charge of Discrimination with the EEOC and Missouri Commission on Human Rights regarding his April 27, 2018, removal as a detective in problem properties.  *Id.* ¶ 35.

On April 24, 2019, the detective position Naes had held in problem properties was posted.  *Id.* ¶ 29.  Naes applied for the position, but he learned on May 24, 2019, that the same alleged "Lesbian Mafia" member who had replaced him the year before, and who had less experience than Naes, had been selected to fill the position.  *Id.* ¶¶ 30-31.  According to the applicable collective bargaining agreement, Naes should have been selected for the position because he was more qualified.  *Id.* ¶ 33.  Additionally, if the two had been equally qualified, he should have been selected because he had more seniority.  *Id.* ¶¶ 33-34.

Naes claims to have lost over $10,000 in overtime compensation and suffered emotional damages as a direct and proximate result of Defendants' actions.  *Id.* ¶¶ 39-40.  He has exhausted administrative remedies and received a Right to Sue Letter prior to filing.  *Id.* ¶¶ 35-38.

Naes's Second Amended Complaint has five counts:

> **Count I**:  Gender discrimination for his April 27, 2018, removal ("2018 Removal"), in violation of Title VII and the Missouri Human Rights Act ("MHRA"), against the City;

>**Count II**: Gender discrimination for his non-selection for the April 24, 2019, job posting ("2019 Posting"), in violation of Title VII and the MHRA, against the City;
>
>**Count III**: Retaliation for his May 2, 2018, complaint of discrimination to Hayden and May 18, 2018, Charge of Discrimination, in the form of his non-selection for the April 24, 2019, job posting, in violation of Title VII, against the City;
>
>**Count IV**: Denial of equal protection, in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983, against all Defendants (and against Coonce and Hayden in both their individual and official capacities);
>
>**Count V**: Failure to instruct, supervise, control, and discipline, in violation of 42 U.S.C. § 1983, against the City and Hayden (in both his individual and official capacity).

## Discussion

Defendants filed two motions to dismiss. The first was filed by the City, along with Coonce and Hayden in their official capacities. The second was filed by Coonce and Hayden in their individual capacities. Between the two motions, Defendants seek dismissal of all counts. The Court will address each count in turn, addressing the arguments from both motions, as applicable.

**Count I:     Gender Discrimination (2018 Removal)**

Under the familiar *McDonnell Douglas* framework, to establish a prima facie case of sex discrimination under Title VII, Naes must allege that: 1) he belonged to a protected class; 2) he was qualified to perform his job; 3) he suffered an adverse employment action; and 4) he was treated differently from similarly situated females. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Turner v. Gonzales*, 421 F.3d 688, 694 (8th Cir. 2005).

Defendants argue that Plaintiff's Count I fails to identify an adverse employment action sufficient to state a claim of discrimination. Doc. [15] at 2-3. According to Defendants, Naes fails to allege that he was terminated, that he received any cut in pay or benefits, or that his

4

transfer from problem properties affected his future career prospects; he was simply transferred out of the unit. *Id.* at 3. Defendants further contend that Naes fails to allege that he was prohibited from working overtime because of his transfer. While he implies that he lost overtime pay due to the transfer, Defendants complain that he fails to state why or how his overtime was prevented. *Id.* at 3-4.

Under Eighth Circuit precedent, "a compulsory, unwanted transfer constitutes an adverse employment action when the transfer results in a *significant change in working conditions* or a diminution in the transferred employee's title, salary, or benefits." *Bonenberger v. St. Louis Metro. Police Dep't*, 810 F.3d 1103, 1108 (8th Cir. 2016) (quoting *Fisher v. Pharmacia & Upjohn,* 225 F.3d 915, 919-20 (8th Cir. 2000) (emphasis in *Bonenberger*) (internal quotation marks omitted). Naes alleges that he "has lost over $10,000 in overtime compensation because not working as a detective." Doc. [28] ¶ 39. A loss of $10,000 in compensation represents "a diminution in [Naes's] title, salary or benefits." *Bonenberger*, 810 F.3d at 1108. Therefore, Naes has adequately pleaded an adverse employment action. *See also Kerns v. Capital Graphics, Inc.*, 178 F.3d 1011, 1016 (8th Cir. 1999) ("Termination, cuts in pay or benefits, and changes that affect an employee's future career prospects are significant enough to meet the standard" for an adverse employment action.).

At the motion to dismiss stage, the pleading standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 555. While Naes will need to establish further factual support for his claim to lost compensation to survive summary judgment, his allegation of lost overtime pay is enough to survive a motion to dismiss.

5

**Count II:       Gender Discrimination (2019 Posting)**

Defendants similarly contend that Naes fails to allege an adverse employment event with respect to his not being hired back into his old position in 2019. Naes "has alleged no evidence that Defendants took any action to prevent him from applying or interviewing for the open position in April 2019," they point out, arguing that having applied and interviewed and not been selected are not sufficient. Doc. [15] at 4.

Defendants' argument again fails. "Denial of a sought-after transfer may constitute an adverse employment action if the transfer would result in a change in pay, rank, or *material working conditions*." *Bonenberger*, 810 F.3d at 1107 (emphasis in original). The alleged loss of $10,000 in overtime compensation is a change in pay, and he claims he has suffered that loss from "not working as a detective," which implies that being hired back into his old position would also have brought a change in rank. As such, Plaintiff has adequately alleged an adverse employment action, and Defendants' motion to dismiss Count II fails.

**Count III:       Retaliation**

"To establish a prima facie case of retaliation, [Naes] must show (1) [he] engaged in protected conduct, (2) [he] suffered a materially adverse employment act, and (3) the adverse act was causally linked to the protected conduct." *Bunch v. Univ. of Ark. Bd. of Trs.*, 863 F.3d 1062, 1069 (8th Cir. 2017) (internal quotation marks removed) (quoting *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 978 (8th Cir. 2012)).

Defendants argue that Naes has failed to state a claim for retaliation in violation of Title VII because he has not alleged a causal nexus between his protected activity (his complaint to Harden and Charge of Discrimination, both in May 2018) and the adverse employment action (his being passed over for the 2019 Posting). Doc. [15] at 5. It is unsurprising, they argue, that

Naes was not selected for a position from which he had already been transferred.  *Id.*  Defendants further contend that there is no causal nexus between the 2018 Charge of Discrimination and complaint to Hayden and Naes's failure to obtain a job posted almost a year later, pointing out that more than a temporal connection is required to demonstrate the causal link necessary for a retaliation claim.  *Id.* (citing *Gagnon v. Sprint Corp.*, 284 F.3d 839, 851 (8th Cir. 2002)).

Naes responds that he does not attempt to establish a causal link by temporal proximity.  Doc. [22] at 4.  Instead, the fact that he was more qualified, or equally qualified with more seniority, than the person hired, and that therefore he should have been awarded the position under the applicable collective bargaining agreement, "would allow a reasonable jury to infer that there was a causal connection" between his 2018 complaints and his rejection in 2019.  *Id.*

Unlike the Eighth Circuit in *Gagnon*, this Court is evaluating Naes's claim on a motion to dismiss, not a motion for summary judgment.  *See* 284 F.3d at 851-52.  The question before this Court is not whether Naes has produced sufficient evidence to *prove* the causal connection between his 2018 complaints and his not being hired in 2019; it is whether his complaint sufficiently *alleges* such a connection.  *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.  That is a substantially lower bar than that applied at summary judgment, and Naes has met it.

In his Second Amended Complaint, Naes alleges all of the elements of a prima facie case for retaliation:  (1) that he engaged in protected conduct, (2) that he experienced an adverse employment action, and (3) that the two were causally connected.  *See Bunch*, 863 F.3d at 1069; *see, e.g.*, Doc. [28] ¶ 59 ("Defendant would not have selected a candidate other than Naes but for his filing of his Charge of Discrimination in May 2018 and/or complaining about illegal discrimination to Defendant Hayden during this same timeframe, in that the stated reason(s) for the decision to select the female who initially replaced Naes was nothing but pretext to hide

7

illegal retaliation."). Naes's allegations of a causal connection are more than mere "labels and conclusions," *Twombly*, 550 U.S. at 555, and, if true, they "state a claim for relief that is plausible on its face," *Iqbal*, 556 U.S. at 678. Whether he can prove them is a question for later in this case. For now, his retaliation claim survives Defendants' motion to dismiss.

**Count IV:     Equal Protection Violation**[3]

Naes brings Count IV against the City as well as Coonce and Hayden in both their individual and official capacities.[4] He alleges that Defendants, acting under color of state law, deprived him of his Fourteenth Amendment right to equal protection by removing him from problem properties and not selecting him for the open detective position because of his gender, in violation of 42 U.S.C. § 1983.

**A.  Claim Against the City**

"To establish municipal liability under § 1983, a plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citing *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 690-92 (1978)). "There are two basic circumstances under which municipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with 'deliberate indifference' to its known or obvious consequences." *Id.* at 817-18.

---

[3] As Naes concedes, Doc. [22] at 6, he may not invoke 42 U.S.C. § 1983 to redress a violation of a right conferred by Title VII. *Henley v. Brown*, 686 F.3d 634, 641 (8th Cir. 2012). Therefore, the Court will ignore that alternative basis for Plaintiff's Count IV. *See* Doc. [28] ¶ 66.

[4] Notwithstanding Defendants' arguments to the contrary, Naes has alleged an adverse employment action sufficient to state a discrimination claim. *See* Section I, *supra*.

8

"A 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). A "custom" can be shown through evidence of the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees." *Id.*

Defendants argue that Naes makes a blanket statement alleging that the actions described in the complaint constitute a violation of his equal protection rights, but he fails to allege "that Defendants had an official policy or unofficial custom that cause these alleged violations," and he does not allege "a widespread, persistent pattern of discrimination." Doc. [15] at 6.

In response, Naes argues that he has made out a claim for municipal liability based on custom because he "has alleged a pattern of illegal discrimination and retaliation, costing the City more than three million dollars during the past several years[.]" Doc. [22] at 5 (citing Doc. [28] ¶¶ 73-74). He further alleges that the City protects command rank officers when they engage in illegal discrimination, and that the City's actions were the direct and proximate cause of his injury. *Id.* (citing Doc. [28] ¶¶ 74, 80).

To allege a custom resulting in municipal liability, Naes must plead:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> (3) Th[e] plaintiff['s] injur[y] by acts pursuant to the governmental entity's custom, i.e., [proof] that the custom was the moving force behind the constitutional violation.

*Ware v. Jackson Cty.*, 150 F.3d 873, 880 (8th Cir. 1998) (alterations in original) (citing *Jane Doe A v. Special Sch. Dist.*, 901 F.2d 642, 646 (8th Cir. 1990)). Because a municipality cannot be

9

liable on a *respondeat superior* theory, "the pattern of unconstitutional conduct must be so pervasive and widespread so as to have the effect and force of law." *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (internal quotations and citations omitted).

"The Eighth Circuit has not directly addressed the quantum of 'continuing, widespread, persistent' conduct that a plaintiff must allege to satisfy the *Iqbal* standard in [the motion to dismiss] context." *Ball-Bey v. Chandler*, 415 F. Supp. 3d 884, 895 (E.D. Mo. 2019).  It has held in the summary judgment context that, "in the face of an express municipal policy prohibiting excessive force,[5] two incidents of excessive force—even assumed to be true—cannot be considered a pattern of widespread and pervasive unconstitutional conduct." *Brewington*, 902 F.3d at 802.  And, at the other end of the spectrum, it has adjudged that "copious evidence of past misconduct," including corroborated testimony that a city had received "many citizen complaints," *does* constitute sufficient evidence to establish a municipal custom.  *Harris v. City of Pagedale*, 821 F.2d 499, 504-06 (8th Cir. 1987) (relying in part on *Herrera v. Valentine*, 653 F.2d 1220 (8th Cir. 1981), in which "many prior citizen complaints to the City of Gordon and to state agencies about police mistreatment of Indians, and also the report of an outside investigation" were found sufficient to ground municipal § 1983 liability).  In *Brewington*, the Eighth Circuit also cited approvingly a Fifth Circuit case holding that eleven documented warrantless searches failed to establish "a pattern of illegality in one of the Nation's largest cities and police forces," in part because "the sample of alleged unconstitutional events is just too small."  *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002).  *See also Plamp v. Mitchell Sch. Dist. No. 17-2*, 565 F.3d 450, 460 (8th Cir. 2009) ("[T]hree concrete complaints

---

[5] Naes concedes that the City of St. Louis and the St. Louis Police Department "purportedly have policies and procedures prohibiting discrimination and/or retaliation."  Doc. [28] ¶ 73.

10

. . . scattered over approximately twelve years and contain[ing] little in terms of content" did not amount to an unconstitutional custom.).

Given the highly fact-specific character of each of these determinations, the Court does not have the benefit of a brightline rule for how many incidents Naes must have alleged—much less with what frequency, level of detail, or degree of similarity—to successfully plead a "continuing, widespread, persistent pattern of unconstitutional misconduct" that could give rise to custom liability. *Ware*, 150 F.3d at 880. Still, the precedents do make clear that Naes's allegations are insufficient.

Naes's evidence for the alleged "pattern of illegal discrimination and retaliation" consists of five incidents "during the past several years." Doc. [28] ¶¶ 73-76; Doc. [22] at 5. The only date provided is for a judgment of a "City of St. Louis jury" in 2014, *id.* ¶ 4, which—considering how long it takes even an uncomplicated case to proceed from filing to a jury verdict—presumably related to conduct dating from substantially earlier. Therefore, Naes's claim of a "continuing, widespread, persistent pattern of unconstitutional misconduct," *Ware*, 150 F.3d at 880, rests on five instances of misconduct over a span of substantially greater than five years. Naes's opposition to the City's Motion to Dismiss points to no case in which a court has held that conduct that occurs less than once a year constitutes a "continuing, widespread, persistent pattern" in any context, much less in a context similar to that of this case. *Ware*, 150 F.3d at 880; *see* Doc. [22] at 5. *See also Andrews v. Fowler*, 98 F.3d 1069 (8th Cir. 1996) (two instances in two months does not constitute a widespread pattern); *Ball-Bey*, 415 F. Supp. 3d at 896 (fourteen instances in six years is not a custom); *Burbridge v. City of St. Louis*, 430 F. Supp. 3d 595, 620-21 (E.D. Mo. 2019) (finding "two or three" instances a year apart is not a custom).

Nor does Naes allege any facts that would bolster his claim that the five alleged instances of "illegal discrimination and retaliation" over substantially more than five years evince a "continuing, widespread, persistent pattern" that includes his claims. *Ware*, 150 F.3d at 880. He does not provide, for example, the number of detectives removed from their roles over a particular time period; the number of vacancies filled during that period; the proportion of vacancies filled by men versus women; or the ratio of men to women in the relevant applicant pools. Nor does Naes allege any other facts that might enable the Court to infer that those five alleged incidents instantiate a pervasive pattern of unconstitutional conduct. *Brewington*, 902 F.3d at 801. *See also Ball-Bey*, 415 F. Supp. 3d at 896 (noting the absence of pleaded facts that could ground a "plausible inference that fewer than 2.5 instances per year over a six-year period, in a major metropolitan police department serving a city of over 319,000 residents, constitutes a pattern or practice").

Additionally, Naes fails to allege that the five alleged past instances of "illegal discrimination and retaliation" are sufficiently similar to each other and to his own allegations to be considered part of the same municipal custom. The Eighth Circuit has held that a "custom" requires proof of factually similar conduct or incidents. *See Mettler*, 165 F.3d at 1205 (dismissing evidence of prior complaints where petitioner had not "shown that the incidents giving rise to these complaints bear any factual similarity" to the incident at issue in the case). In his Second Amended Complaint, Naes alleges no factual commonality between his own claims and the five other examples with which he purports to establish a custom, other than that they all fall under the heading "illegal discrimination and/or retaliation." *See, e.g.*, Doc. 28 ¶ 74. He does not allege, for example, that any of the past incidents had anything to do with gender or

12

sexual orientation. Nor does he allege any instances of reverse discrimination or discrimination against males in particular.

Naes also fails to account for apparent dissimilarities between his own claims and the past incidents, such as the fact that most of the past instances occurred under the leadership of a different Chief of Police, and at least one (i.e., the one resulting in jury verdict in 2014, Doc. 28 ¶¶ 4, 75(a)) likely occurred before the Defendant City of St. Louis assumed control of the St. Louis Police Department in September 2013. Doc. [28] ¶ 72. In sum, Naes fails to allege sufficient facts to support an inference that the five examples he cites of past retaliation and discrimination are sufficiently factually similar to his claims to be manifestations of the same "continuing, widespread, persistent pattern." *Ware*, 150 F.3d at 880. *See Thiel v. Korte*, 954 F.3d 1125, 1129 (8th Cir. 2020) ("Though Thiel alludes to prior complaints against Baker and Minor, he fails to provide the details necessary for us to determine whether these complaints . . . involved conduct sufficiently similar to what is alleged here . . . .").

Because Naes fails to plead a "continuing, widespread, persistent pattern of unconstitutional misconduct" sufficient to support a finding of a municipal custom, his § 1983 claim against the City for violation of his right to equal protection is dismissed. *Ware*, 150 F.3d at 880.

### B. Official Capacity Claims

Naes's § 1983 claims against individual employees of the City in their official capacities are redundant of his claim against the City. *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) ("A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity."). Therefore, Naes's official capacity claims are dismissed.

13

### C. Individual Capacity Claims

Coonce and Hayden contend that Naes does not adequately allege that either of them directly participated in his removal or non-selection to sustain claims against them in their individual capacities. Doc. [17] at 3. They also argue that Naes's failure to plead "any specific action taken by either Hayden or Coonce" entitles them to qualified immunity. *Id.* at 7. Because Naes does plead specific violations of his constitutional rights by both Hayden and Coonce, both arguments fail.

While § 1983 claims may not be based on a *respondeat superior* theory, the Eighth Circuit recognizes that a supervisor may be held individually liable under § 1983 if he or she "directly participates in the constitutional violation[.]" *Brockinton v. City of Sherwood*, 503 F.3d 667, 673 (8th Cir. 2007). Naes does allege that Coonce and Hayden "directly participate[d]" in the discrimination against him. *Id.*; *see* Doc. [28] ¶¶ 23, 24, 26, 30-34. He claims, for instance, that "Coonce had [him] removed as a detective in problem properties and assigned a member of 'the Lesbian Mafia' to replace him, even though this officer had no experience or training in handling dog investigations." *Id.* ¶ 24. He also claims that he "complained about this illegal discrimination and other misconduct to Defendant Hayden," and that Hayden "took no action when he learned about the discrimination Naes suffered, other than to allow an Employee Misconduct Report to be filed against Naes to intimidate and silence Naes . . . ." *Id.* ¶¶ 26, 78.

To survive a motion to dismiss, a plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555. Naes has cleared that bar. The complaint describes Coonce's and Hayden's personal involvement in the alleged violations of Naes's constitutional rights. Though Naes will

eventually have to adduce evidence to support those allegations, the allegations themselves are sufficient to defeat Defendants' motion to dismiss.

**Count V:   Failure to Train or Supervise**

Naes brings Count V against the City and against Hayden in his official and individual capacities. Naes alleges that if Defendants had trained, supervised, controlled, or disciplined law enforcement personnel properly, "the gender-based discrimination and retaliation of Plaintiff would not have occurred." Doc. [28] ¶¶ 77-79.

### A. Claim Against the City

Naes argues that "[t]he facts supporting [his] custom claim against the City also show a deliberate indifference to or tacit authorization of this illegal discrimination," supporting his failure to train or supervise claim. Doc. [22] at 5; *see Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train.") (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)). As discussed in Section IV(A), above, Naes has failed to state a claim for § 1983 municipal liability based on a custom of illegal discrimination and retaliation. Naes has therefore also failed to establish a pattern of constitutional violations on the basis of which the City could be found to have failed to train or supervise its employees. *See City of Canton v. Harris*, 489 U.S. 378, 389 (1989) ("Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality . . . can a city be liable for such a failure under § 1983."); *Ball-Bey*, 415 F. Supp. 3d at 901 (finding that fourteen instances of purportedly similar conduct that do not establish a municipal custom also do not ground a failure to train claim). Naes's § 1983 claim against the City for failure to train or supervise therefore fails.

### B. Official Capacity Claim

Again, Naes's claim against Hayden in his official capacity is redundant of his claim against the City. "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch*, 627 F.3d at 1257. The official capacity claim is therefore dismissed.

### C. Individual Capacity Claim

To show that Hayden violated Naes's constitutional rights by failing to train or supervise, Naes must show that: 1) Hayden received notice of a pattern of unconstitutional acts by subordinates; 2) that Hayden demonstrated deliberate indifference to or tacit authorization of the offensive acts; 3) that Hayden failed to take sufficient remedial action; and 4) that such failure proximately caused Naes's injury. *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997). Under § 1983, a claim for failure to supervise requires the same analysis as a claim for failure to train. *Liebe v. Norton*, 157 F.3d 574, 579 (8th Cir. 1998). "Neither claim can succeed without evidence [a defendant] '[r]eceived notice of a pattern of unconstitutional acts committed by [his or her employees].'" *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1216-17 (8th Cir. 2013) (quoting *Parrish v. Ball*, 594 F.3d 993, 1002 (8th Cir. 2010)).

Naes has failed to allege that Hayden had notice of a pattern of unconstitutional acts by his subordinates. In his complaint, Naes alleges five examples of conduct that he believes establish a pattern of which Hayden should have known. Doc. [28] ¶ 75. None of those examples involves sex discrimination. "To impose supervisory liability, other misconduct must be very similar to the conduct giving rise to liability." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015) (internal quotation omitted). Here, there is no pattern of "very similar" conduct (i.e., sex discrimination within the SLMPD) of which Hayden could or should have had notice.

16

Naes further alleges two instances of retaliation, but even assuming *arguendo* that they are "very similar" to the retaliation he alleges he endured, that is not enough to establish a pattern for purposes of liability for failure to supervise. *See Jacob v. City of Osceola*, 2006 WL 741918, at *8 (W.D. Mo. Mar. 20, 2006) ("The Eighth Circuit has held that isolated incidents are insufficient to establish supervisory liability for a constitutional violation because they do not provide adequate notice of a pattern of misconduct."); *see also Doe v. Gooden*, 214 F.3d 952 (8th Cir. 2000) (finding no notice of a pattern of unconstitutional behavior where supervisor knew of a teacher's repeated verbal abuse of students and two incidents of physical abuse); *Thelma D. v. Bd. of Educ. of St. Louis*, 934 F.2d 929 (8th Cir. 1991) (five complaints of abuse over sixteen-year period against teacher insufficient to establish pattern of misconduct); *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist. of St. Louis Cty.*, 901 F.2d 642 (8th Cir. 1990) (finding no notice of a pattern of unconstitutional behavior where no official received more than two complaints); *Robinson v. City of St. Louis*, No. 4:17-cv-156 PLC, 2018 WL 1695534, at *17 (E.D. Mo. Apr. 6, 2018) (finding no notice or pattern of discrimination where there were fifteen claims of misconduct over an eleven-year period), *aff'd in part, rev'd in part and remanded sub nom. Robinson v. Hawkins*, 937 F.3d 1128 (8th Cir. 2019).

Notice is the touchstone of deliberate indifference in the context of § 1983 liability. *See Brown*, 520 U.S. at 409; *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 392-93 (8th Cir. 2007). Absent notice, a defendant cannot be liable for his subordinates' misconduct. *Doe v. Hansen*, No. 4:16-cv-546 JAR, 2018 WL 2223679, at *11 (E.D. Mo. May 15, 2018), *aff'd sub nom. Doe v. Fort Zumwalt R-II Sch. Dist.*, 920 F.3d 1184 (8th Cir. 2019). Because Hayden did not have notice of a pattern of unconstitutional conduct, Naes's § 1983 claim against Hayden for failure to train or supervise must be dismissed.

17

**Conclusion**

**IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss, Docs. [14] and [16], are **DENIED** with respect to Counts I, II, and III.

**IT IS FURTHER ORDERED** that Defendants' Motions to Dismiss, Docs. [14] and [16], are **GRANTED** with respect to Count V.

**IT IS FINALLY ORDERED** that Defendants' Motions to Dismiss, Docs. [14] and [16], are **GRANTED in part** and **DENIED in part** with respect to Count IV.  The Motions are granted as to Plaintiff's claims of municipal liability and official capacity liability, but they are denied as to Plaintiff's claims of individual liability.

An appropriate Order of Dismissal shall accompany this Memorandum and Order.

Dated this 13th day of October, 2020.

*Sarah E. Pitlyk*

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE