UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LOUIS NAES, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:19-cv-02132-SEP |
| THE CITY OF ST. LOUIS, et al., | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM AND ORDER**

Before the Court is the City of St. Louis's Motion to Dismiss Count V of the Third Amended Complaint. Doc. 66. For the reasons set forth below, the Motion is granted.

**FACTS AND BACKGROUND**[1]

Plaintiff Louis Naes, a male, has been employed as a police officer with the St. Louis Metropolitan Police Department (SLMPD) since 2003. Doc. 59 ¶ 10. In October 2012, he was assigned as a detective to the Problem Properties unit, where he was assigned to the Animal Abuse Task Force. *Id.* ¶ 11. His duties involved, among other things, working with Randy Grim, the founder of Stray Rescue of St. Louis. *Id.* ¶ 12. Plaintiff and his partner tried to investigate Grim when they learned of alleged illegal conduct, as well as racist and sexual comments. *Id.* ¶¶ 13, 18, 21. When Grim learned of these investigations, he told Plaintiff that when Defendant Coonce was in charge, he (Grim) would have the last laugh. *Id.* ¶ 17.

On April 12, 2018, Coonce was promoted to the rank of major and placed in charge of the Intelligence Unit. *Id.* ¶ 22. On April 24th, at Coonce's direction, Plaintiff was told that he was no longer allowed to leave headquarters and was not allowed to continue working on certain ongoing investigations. *Id.* ¶ 23. On April 27th, Coonce had Plaintiff removed as a detective in Problem Properties and replaced him with someone with no relevant experience or training in dog investigations. *Id.* ¶ 24. Plaintiff claims that his replacement was a member of "the Lesbian

---

[1] For the purpose of this Motion, the Court assumes that the factual allegations in the Third Amended Complaint are true. *Neitzke v. Williams,* 490 U.S. 319, 326-27 (1989).

1

Mafia," a group of homosexual females within the SLMPD whom Coonce advances based upon gender and sexual orientation rather than knowledge, skills, or abilities. *Id.* ¶¶ 20, 24.

On May 2, 2018, Plaintiff complained about this illegal discrimination and other alleged misconduct to Hayden. *Id.* ¶ 26. On May 4th, an Employee Misconduct Report (EMR) was filed against Plaintiff, which he believes was an attempt to intimidate him and prevent him from speaking out about the discrimination he suffered. *Id.* ¶ 27. The EMR remained pending as of the date of filing of his Second Amended Complaint, but it has since concluded in a written reprimand. *Id.* ¶ 28. On May 18th, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission and Missouri Commission on Human Rights regarding his April 27th removal as a detective in Problem Properties. *Id.* ¶ 35.

Nearly a year later, on April 24, 2019, the detective position Plaintiff had held in Problem Properties was posted. *Id.* ¶ 29. Plaintiff applied for the position, but he soon learned that the same alleged Lesbian Mafia member who had replaced him the year before, who had less experience than Plaintiff, had been selected to fill the position. *Id.* ¶¶ 30-31. According to the applicable collective bargaining agreement, Plaintiff should have been selected for the position because he was more qualified. *Id.* ¶ 33. Additionally, if the two had been equally qualified, he should have been selected because he had more seniority. *Id.* ¶¶ 33-34.

Plaintiff claims to have lost over $10,000 in overtime compensation and to have suffered emotional damages as a direct and proximate result of Defendants' actions. *Id.* ¶¶ 39-40. He exhausted administrative remedies and received a Right to Sue Letter prior to filing. *Id.* ¶¶ 35-38.

Plaintiff filed his original Complaint (Doc. 1) in July 2019 and his First Amended Complaint (Doc. 11) in October 2019. In March 2020, with two motions to dismiss (Docs. 14 & 16) pending, Plaintiff filed his Second Amended Complaint (Doc. 28). The parties requested that the Court apply the pending motions to the Second Amended Complaint. *See* Doc. 30. On October 13, 2020, the Court denied dismissal of Counts I, II, and III; dismissed in part Count IV; and dismissed Count V without prejudice. Doc. 39. In February 2021, Plaintiff filed his Third Amended Complaint (Doc. 59), realleging Count V. The instant Motion followed, seeking dismissal of the re-alleged Count V. *See* Doc. 66.

## LEGAL STANDARD

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a complaint. When considering a Rule 12(b)(6) motion, a court

assumes the factual allegations of a complaint are true and draws all reasonable inferences in the non-movant's favor. *Neitzke*, 490 U.S. at 326-27; *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) (citation omitted).

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Bell Atlantic Corp. v. Twombly,* the Supreme Court clarified that Rule 8(a)(2) requires complaints to contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. 544, 555 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009). Specifically, to survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). The issue in considering such a motion is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. *See Twombly,* 550 U.S. at 556.

## DISCUSSION

### I. Plaintiff asserts an unofficial custom claim under *Monell*.

Count V of the Third Amended Complaint brings a claim under 42 U.S.C. § 1983 and alleges that Defendant City of St. Louis "protects command rank officers who discriminate and retaliate against subordinates, instead of properly supervising/disciplining them when such misconduct occurs," thereby "encouraging such misconduct to continue." Doc. 59 ¶ 75. According to Plaintiff, the discrimination he eventually suffered was a "direct and proximate result" of the City's "deliberate indifference to violations of state and federal anti-discrimination laws such that it was a known and obvious consequence that the command staff would continue to discriminate and retaliate against other employees of the Department. . . ." *Id.* ¶ 100. Plaintiff believes that the alleged custom of protecting command rank officers after they commit misconduct establishes a *Monell* claim against the City under § 1983. *Id.* at 1; *see Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658 (1978).

In Counts IV and V of his Second Amended Complaint, Plaintiff alleged claims that were nearly identical to those he advances here. Doc. 28 at 13-17. There, Plaintiff claimed that "there exists within the City/Department customs, practices and usages that are so pervasive that they constitute the policies of these Defendants," *id.* ¶ 73, and "if Defendants had trained, supervised, controlled, or disciplined law enforcement personnel properly, 'the gender-based discrimination

3

and retaliation of Plaintiff would not have occurred.'" Doc. 39 at 15 (quoting Doc. 28 ¶¶ 77-79). The allegedly unconstitutional custom in the Second Amended Complaint was that "the City continues to protect command rank officers who engage in [illegal discrimination] instead of taking action to show that this misconduct will not be tolerated in its police department." Doc. 28 ¶ 76.

In ruling on Count IV of the Second Amended Complaint, this Court held that Plaintiff had failed to plead a "continuing, widespread, persistent pattern of unconstitutional misconduct that could give rise to custom liability." Doc. 39 at 10 (quotation marks and citation omitted). In so ruling, the Court noted that the Eighth Circuit has not squarely addressed how much misconduct qualifies as a "continuing, widespread, persistent pattern," but that it has held, on one end of the spectrum, that two incidents are insufficient, and on the other, that "copious evidence," including "many prior citizen complaints," *is* sufficient. Doc. 39 at 10 (quotation marks and citations omitted). After reviewing the five instances of discrimination that Plaintiff argued established a custom of unlawful discrimination in his Second Amended Complaint, this Court held that they were insufficiently similar to one another, insufficiently similar to Plaintiff's own claim, and too few to amount to a custom over a span of five years. Doc. 39 at 11-13. Applying the analysis from Count IV to Count V, this Court further held that, because Plaintiff "failed to state a claim for § 1983 municipal liability based on a custom of illegal discrimination and retaliation[,] Plaintiff has therefore also failed to establish a pattern of constitutional violations on the basis of which the City could be found to have failed to train or supervise its employees." Doc. 39 at 15 (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *Ball-Bey v. Chandler*, 415 F. Supp. 3d 884, 901 (E.D. Mo. 2019)). In his Third Amended Complaint, Plaintiff tries to avoid the defects that doomed his earlier *Monell* claims.

In *Monell*, the Supreme Court overruled *Monroe v. Pape*, 365 U.S. 167 (1961), and held that local governments are persons under § 1983 and therefore may be sued for constitutional violations. 436 U.S. at 690. Notwithstanding that new rule, the Court held that municipalities could not be liable on a theory of *respondeat superior*. *Monell*, 436 U.S. at 694 ("A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* Showing an official

4

policy or an unofficial custom is not the only method of proving municipal liability; even if a plaintiff cannot show a widespread custom, the government might alternatively be liable for its failure to act. *See Harris*, 489 U.S. at 388(local government may be liable for failure to train or supervise police use of force if the city's failure to act demonstrated "deliberate indifference to the rights of persons with whom the police come into contact"); *Connick v. Thompson*, 563 U.S. 51 (2011) (applied *Canton* to prosecutors, but held that a single *Brady* violation was insufficient to show deliberate indifference or conscious disregard for the defendant's *Brady* rights).  Thus, three methods for municipal liability have emerged: "plaintiff must show that a constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Aldridge v. City of St. Louis*, 2019 WL 1695982, at * 9 (E.D. Mo. Apr. 17, 2019) (citing *Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018)).

It is not perfectly clear which of the three methods Plaintiff seeks to proceed under.  Count V of the Third Amended Complaint is titled "**Failure to Supervise**/Discipline Command Rank Officers" (emphasis added); it details allegations against the City that purportedly "demonstrate a ***deliberate indifference*** to violations of . . . anti-discrimination laws" (emphasis added); and his Opposition claims he must only demonstrate "an unconstitutional ***custom***, due to the City's ***failure to supervise***/train command rank officers."  Doc. 59 at 13, 19; Doc. 74 at 6.  But Plaintiff also explicitly disclaims making a *Monell* claim based on a failure to train, Doc. 74 at 3 ("Plaintiff has not alleged *Monell* liability based upon a failure to train claim . . . ."), and he consistently argues that the City "has a ***custom*** of ***protecting command rank officers***, instead of properly supervising them and disciplining them when they engage in illegal discrimination."  Doc. 74 at 3 (emphasis added); *see also id.* at 1, 7, 9, 10.  Because Plaintiff expressly denies making a failure to train claim, the Court will analyze Count V under the "unofficial custom" theory of *Monell* liability.  That is consistent with Plaintiff's own formulation: that there is a "custom of protecting command rank officers . . . by failing to properly supervise/discipline them."  Doc. 74 at 1.  To the extent Plaintiff uses the phrases "failure to train," "failure to supervise," or "failure to discipline,"[2] he

---

[2] Failure to discipline has been used in the same context as failure to train or supervise.  To the extent that a claim for failure to discipline is cognizable under *Monell*, courts in this district have routinely considered it concurrently with failure to train or supervise claims.  *See, e.g.*, *Laney v. City of St. Louis*, 2019 WL 2423308, at *6 (E.D. Mo. June 10, 2019) (Dismissing "Laney's *Monell* claim to the extent it is based on the City's alleged failure to supervise, train, and discipline SLMPD police officers."); *Aldridge*, 2019 WL 1695982, at *10 (same).

5

evidently does not intend to assert a claim that falls into the third category of *Monell*. Rather, it appears that the failure to supervise or discipline officers is related to the alleged *custom* of improper protection for which Plaintiff thinks the City is liable. As Plaintiff does not allege that the City had an official policy of discrimination either, his only avenue for stating a *Monell* claim is to allege facts that demonstrate an unofficial custom, and so that is the lens through which the Court will analyze his claim.

II. **Plaintiffs' support for an unconstitutional custom includes legal actions resulting from past complaints of officer misconduct.**

A "custom" can be shown through evidence of the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). To allege a custom resulting in municipal liability, Plaintiff must plead:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> (3) The plaintiff's injury by acts pursuant to the governmental entity's custom, i.e., proof that the custom was the moving force behind the constitutional violation.

*Ware v. Jackson Cty.*, 150 F.3d 873, 880 (8th Cir. 1998) (cleaned up) (citing *Jane Doe A v. Special Sch. Dist.*, 901 F.2d 642, 646 (8th Cir. 1990)). "[T]he pattern of unconstitutional conduct must be so pervasive and widespread so 'as to have the effect and force of law.'" *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1075 (8th Cir. 1996)). As noted in the Court's previous Order, the inquiry is highly fact-specific. Doc. 39 at 11. Thus, it is conceivable that additional factual allegations could change a court's assessment of the viability of a custom liability claim. In this instance, though, even with the new allegations in the Third Amended Complaint, Plaintiff still fails to state a claim for *Monell* liability upon which relief could be granted.

Plaintiff claims that, within the City and SLMPD, there exists an unconstitutional custom of protecting command rank officers "who discriminate and retaliate against subordinates, instead of properly supervising/disciplining them when such misconduct occurs," "thereby encouraging such misconduct to continue." Doc. 59 ¶ 75; *see also* Doc. 74 at 6, 9-10. Because command rank officers have not been disciplined, demoted, or fired following an incident of discrimination or

6

retaliation that the City ultimately paid for, Plaintiff contends, those command rank officers have persisted in their discriminatory practices, which ultimately led to the discrimination Plaintiff experienced. Plaintiff argues that the City's conduct demonstrates a "tacit authorization of, or at least deliberate indifference to, command rank officers who discriminate and retaliate against subordinates." Doc. 74 at 3.

In support of the existence of a custom of improper protection, Plaintiff alleges the following:

1. The 2013 promotion of Lt. Michael Deeba during the pendency of a 2011 lawsuit by a female officer alleging sexual harassment against him, which, in 2014, resulted in a jury verdict against Lt. Deeba. The verdict was overturned on appeal, and there was eventually a settlement for $825,000. Doc. 59 ¶ 85.

2. A 2015 sexual harassment and retaliation suit against Lt. Deeba, which also ended in a settlement in 2018. Plaintiff claims Lt. Deeba faced no recourse thereafter. *Id.* ¶ 86.

3. An August 2013 judgment against Lt. Col. Reggie Harris[3] and Lt. Michael Muxo for race discrimination that resulted in $1,020,000 in actual and punitive damages. *Id.* ¶ 79.

4. A 2014 internal department complaint against Lt. Col. Harris and Lt. Muxo related to the 2013 judgment, which was later withdrawn. *Id.* ¶¶ 81, 82. The City Counselor's Office closed the investigation of Lt. Col. Harris and Lt. Muxo after the complaint was withdrawn. *Id.* ¶ 82.

5. A May 2014 jury verdict against Defendant Coonce for First Amendment retaliation resulting in $350,000 in damages, followed by Coonce's promotion to captain (five months later) and major (four years later). *Id.* ¶ 79.

6. A 2016 lawsuit against former Police Commissioner Dotson related to the 2013 judgment against Lt. Col. Harris and Lt. Muxo, which ended in a settlement for $725,000, and which, Plaintiff claims, resulted in no adverse consequences for Commissioner Dotson. *Id.* ¶ 84.

7. Another 2016 lawsuit against Commissioner Dotson by an officer who claimed he had been passed over for promotion due to his race in 2015. The parties

---

[3] The Complaint also alleges that Harris "felt free to discriminate and retaliate against a civilian employee of the Department in February 2014, resulting in serious and permanent injury to that employee. Upon information and belief, Harris still was not disciplined." Doc. 59 ¶ 83. Unlike the other nine alleged instances of misconduct, that allegation is threadbare and conclusory: Plaintiff offers no facts to support the allegation that Harris discriminated and retaliated; he simply concludes that he did so. That does not meet the minimal pleading standard under *Twombly* and *Iqbal*. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. Therefore, the Court will disregard that allegation. *See Glick v. Western Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) ("However, we need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts.").

      settled for $300,000, and Plaintiff claims Commissioner Dotson faced no recourse thereafter. *Id.* ¶ 87.

8. A third 2016 lawsuit against Commissioner Dotson that alleged race discrimination and resulted in a settlement for $50,000. *Id.* ¶ 88.

9. A 2017 lawsuit against Commissioner Dotson alleging race discrimination, during which the City stated that they believed the several officers who refuted the allegations of discrimination were telling the truth, and which resulted in a settlement for $1,000,000. *Id.* ¶¶ 89-93.

In sum, then, Plaintiff alleges that command rank officers were not properly disciplined after episodes of misconduct that resulted in two court judgments (the more recent of which dates from May 2014), six settlements, and one withdrawn internal complaint, and that the City's protection of the offending officers caused the discrimination against Plaintiff himself. Including Plaintiff's own case, he cites ten legal actions resulting from complaints of unconstitutional conduct that allegedly occurred between 2011 and 2019. That said, three of those actions (one lawsuit resulting in a judgment, the internal complaint, and another lawsuit resulting in a settlement—numbers 3, 4, and 6, above) resulted from the same underlying facts, and all ten actions involve allegations against five individual officers in total.[4] Thus, assuming the truth of all of Plaintiff's allegations (and, further, accepting Plaintiff's argument that the Court should disregard the variety of different kinds of underlying misconduct and the dissimilarity between the other claims and Plaintiff's and look only at the City's protection of offending officers[5]), Plaintiff's

---

[4] In fact, fully five of the enumerated actions were filed against former Commissioner Dotson, and all but two of the alleged incidents took place under his leadership. *See* ST. LOUIS POST DISPATCH, *St. Louis police chief out on new mayor's first full day* (April 20, 2017), https://www.stltoday.com/news/local/crime-and-courts/st-louis-police-chief-out-on-new-mayors-first-full-day/article_368d46a7-616a-5bf7-9571-e4ef111ac24c.html, (last accessed Dec. 16, 2021). Commissioner Dotson had retired and been replaced before the alleged adverse employment actions that gave rise to this lawsuit. In addition to the significant differences between the types of misconduct alleged here and those alleged in the prior cases, the intervening departure of the police commissioner who was accused in five of the ten cited instances of misconduct, and the absence of any similar allegations against the current commissioner, make it even harder to conclude that the events underlying this lawsuit are part of the same "continuing, widespread, persistent pattern of unconstitutional misconduct," *Mettler*, 165 F.3d at 1204, as the events that allegedly gave rise to the earlier actions. *See* Doc. 39 at 13. Even abstracting away from the types of underlying misconduct, as Plaintiff urges the Court to do, Plaintiff still "fails to account for apparent dissimilarities" between his claim and the others in the sense that he is alleging improper protection under different leadership than that which allegedly improperly protected officers with respect to earlier instances of misconduct. *Id.*

[5] *See* Doc. 74 at 9-10. The Court takes no position on the merits of this argument, as even assuming it prevails, Plaintiff's Count V fails to state a claim upon which relief can be granted.

custom claim still rests on the protection of five officers after eight instances of discrimination or retaliation over a span of nine years. Whether counted by officer or by incident, considering the context of a large metropolitan police department, it is by no means certain that such numbers could constitute a "continuing, widespread, persistent pattern of unconstitutional misconduct" sufficient to support a finding of a municipal custom under the relevant precedents. *Ware*, 150 F.3d at 880; *see* Doc. 39 at 10-11 (applying precedent to Plaintiff's Second Amended Complaint, and noting that Plaintiff had produced no case in which conduct that occurred less than once a year had qualified as a custom in any context, much less in a context similar to that of this case); *see also Brewington*, 902 F.3d at 801 ("[T]he pattern of unconstitutional conduct must be *so pervasive and widespread so as to have the effect and force of law.*") (emphasis added). But the Court does not reach whether the protection of five officers after eight instances of misconduct over nine years qualifies as a municipal custom in the context of the St. Louis Metropolitan Police Department, because there is an antecedent problem with many of Plaintiff's allegations: They improperly rely on settlement agreements as proof of misconduct.

**III.     Plaintiff improperly relies on settlements as evidence of officer misconduct.**

The City argues that Plaintiff should not be allowed to rely on settlements to establish a *Monell* custom. Doc. 67 at 3, 7 (citing Fed. R. Evid. 408; *Weems v. Tyson Foods, Inc.*, 665 F.3d 958, 966 (8th Cir. 2011) ("Evidence relating to a compromise offer is admissible if offered for another purpose, i.e., for a purpose other than to prove or disprove the validity of the claims that the offers were meant to settle") (internal quotation marks and citation omitted)). The City also relies on *Green v. Baca*, 226 F.R.D. 624 (C.D. Cal. 2005), for the proposition that prior settlement offers should not be used to prove a *Monell* policy. In *Green*, the court concluded that "any attempt by the plaintiff to introduce evidence of settlement negotiations regarding his claim to prove liability would be prohibited by Rule 408," and "[t]he same prohibition extends to evidence of completed settlements in other cases where the evidence is offered against the compromiser." *Id.* at 640 (collecting cases). According to the City, if Plaintiff were allowed to use settlements to substantiate a *Monell* custom, "the City would be seriously disincentivized from settling claims, which would be contrary to long-established policy concerning settlements that is enshrined in FRE 408." Doc. 67 at 7. A settlement is not necessarily an admission of guilt; rather, a defendant might settle claims for various reasons including the cost and inconvenience of litigation, the unavailability of key witnesses, the desire to avoid the uncertainty of trial, the inclination to bring

9

disruptive litigation to an end, and to avoid the risk of future liability. *Id.* If the Court were to conclude that entering into settlements could demonstrate a pattern or custom that *creates* future liability, the City argues, it would be incentivized, contrary to public policy, to avoid settling cases in the future. *Id.*

Plaintiff counters that he is not attempting to use the settlement agreements to prove Defendant's liability, but rather to show that the City was on notice of the ongoing discrimination and retaliation. Doc. 74 at 8-9. Specifically, "[t]he settlement agreements are being offered to show that the City condones illegal discrimination and retaliation when committed by command rank officers, even when this misconduct costs the City hundreds of thousands of dollars." *Id.* at 8. Plaintiff argues that *Weems* prohibited the use of settlement agreements only when offered by an employee to prove the employer's liability in the same case. *Id.* (citing *Weems*, 65 F.3d at 966). According to Plaintiff, *Green* does not support Defendant's position either because *Green* held that the settlement agreements, though inadmissible to prove liability, were admissible to prove that the employer was on notice. *Id.* at 9 (citing *Green*, 226 F.R.D. at 641). Finally, Plaintiff points to *Spell v. McDaniel*, a *Monell* case in which the Fourth Circuit held "evidence of the City's settlement of an earlier police brutality action brought by another party . . . was properly admitted to show, as an essential element of Spell's 'condoned custom' theory of liability, that the City was sufficiently aware of the existence of a developed practice or custom of such conduct." 824 F.2d 1380, 1400 (4th Cir. 1987).

Federal Rule of Evidence 408 bars a plaintiff from admitting evidence related to prior settlement negotiations to prove the compromiser's liability. The Court agrees that "[t]he same prohibition extends to evidence of completed settlements in other cases where the evidence is offered against the compromiser." *Green*, 226 F.R.D. at 640; *see also* Fed. R. Evid. 408, Advisory Committee Note ("While the rule is ordinarily phrased in terms of offers of compromise, it is apparent that a similar attitude must be taken with respect to completed compromises when offered against a party thereto. This latter situation will not, of course, ordinarily occur except when a party to the present litigation has compromised with a third person."). Plaintiff therefore cannot use prior settlements to prove that the City was liable for the claims of discrimination that were dismissed as a result of those settlements.

In certain circumstances, a plaintiff may use a defendant's prior settlements to show that the defendant was on notice of an unlawful custom. *Spell*, 824 F.2d at 1400. Plaintiff claims that

10

is what he is doing here. The Court disagrees. In *Spell*, the Fourth Circuit upheld the district court's admission of a settlement of a police brutality action only for the specific purpose of proving that the city was "sufficiently aware of the existence of a developed practice or custom," not to prove the existence of such a custom. *Id.* The existence of the custom was amply supported by other evidence, including the testimony of 17 witnesses from inside and outside of the department, "concentrated upon a time period of three years preceding" the events giving rise to that lawsuit. *Id.* at 1392. A settlement agreement was introduced exclusively to show that the department knew about that custom. *Id.* at 1400. Here, unlike in *Spell*, Plaintiff alleges no facts supporting the alleged custom of improper protection of "command rank officers who discriminate and retaliate against subordinates," Doc. 59 ¶ 87, other than the fact that officers were not disciplined after two legal judgments, one withdrawn internal complaint, and six settlements. *See id.* at 13-20. The settlements do not serve a "notice" function; Plaintiff cites them as evidence that the accused command rank officers committed misconduct.

Put differently, Plaintiff's position *requires* the Court to infer liability from the existence of settlements alone. Plaintiff argues: (a) A lawsuit was filed against an officer; (b) the City settled that lawsuit; therefore, (c) the City should have disciplined that officer. Implicit in that argument is the assumption that the City would not have settled the lawsuit unless the officer had indeed been guilty of the alleged misconduct—the very assumption that is impermissible under Rule 408, *Weems*, and *Green*, among other cases. *Weems*, 665 F.3d at 966-67; *Green*, 226 F.R.D. at 640; *see also Macsherry v. Sparrows Point, LLC*, 973 F.3d 212, 224 (4th Cir. 2020) ("because the district court found that the Compromise Statements were admissible without limitation, the court allowed them to be used for one of the very purposes foreclosed [under Rule 408]: to prove the validity of the claim that 'the compromise offer was meant to settle'") (citing *Weems*, 665 F. 3d at 966). In other words, Plaintiff is relying on the settlements "to prove . . . the validity of the claims that the offers were meant to settle." Fed. R. Evid. 408 (explaining the purpose for which settlements are *not* admissible). For that reason, Plaintiff's reliance on settlement agreements to substantiate a putative custom of improper protection is impermissible under Rule 408.

### IV. Without settlements, Plaintiff cannot establish a *Monell* custom under this Court's precedents.

Without relying on settlements, Plaintiff's remaining allegations supporting a custom of improper protection include two judgments and a single (withdrawn) complaint, in addition to his

11

own alleged injury.  One of the judgments and the complaint involve the same underlying facts and the same two accused officers, and the other judgment involved the same officer accused by Plaintiff.  Thus, the Complaint alleges, at most, four occurrences of improper protection of a total of three individual officers, and the other three alleged occurrences date from 2013 and 2014, with no plausibly alleged intervening instances until the events giving rise to Plaintiff's claim, which took place in 2018 and 2019.  The protection of three officers after findings of discrimination or retaliation within a single year, followed by another single act of protection of one of those same officers more than six years later, is far from a "continuing, widespread, persistent pattern" of the kind that could constitute a custom for the purposes of *Monell*.  *Ware*, 150 F.3d at 880.  Nor do such allegations establish a "pattern of unconstitutional conduct [that is] so pervasive and widespread so as to have the *effect and force of law*."  *Brewington*, 902 F.3d at 801 (emphasis added) (holding that two or three instances a year apart is not a custom); *see also Ball-Bey*, 415 F. Supp. 3d at 896 (fourteen instances in six years is not a custom).  Therefore, Plaintiff fails to state a *Monell* custom claim.[6]

---

[6] Having found the Complaint deficient, the Court declines to deny the motion to dismiss in order to allow Plaintiff additional discovery to attempt to uncover as-yet-unknown facts, *see Twombly*, 550 U.S. at 561, though some courts do appear to have done so in the context of *Monell* custom claims.  *See, e.g., Green*, 2020 WL 7056015, at *6; *Harvey v. Great Circle*, 2019 WL 5579355, at *5 (E.D. Mo. Oct. 29, 2019).  Those denials have cited *Doe v. School District of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003), which held that, "[a]t a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom."  Those courts appeared to construe *Norfolk* as providing a relaxed pleading standard for *Monell* claims, requiring a plaintiff to plead only enough facts for a court to conclude that, together with as-yet-undiscovered facts, the allegations might eventually establish a custom claim.

The Eighth Circuit rejected that reading of *Norfolk* in *Crumpley-Patterson v. Trinity Lutheran Hospital*, 388 F.3d 588, 591 (8th Cir. 2004).  On this Court's reading, *Norfolk* and *Crumpley-Patterson* did not relax the pleading standard for *Monell* claims.  Rather, they clarified that plaintiffs who want to proceed under *Monell* need not use precise legal terms like "unconstitutional custom" in their pleadings; they need only plead facts from which such a custom can be inferred.  Here, Plaintiff has done the opposite:  He has used the appropriate legal terms for a *Monell* custom claim, but he has not pled sufficient facts to support an inference that such a custom exists.  Thus, he fails to state a claim under *Norfolk* and *Crumpley-Patterson*.

That conclusion is bolstered by developments since *Norfolk* and *Crumpley-Patterson*—both *Conley*-era cases that cited the now-obsolete "no set of facts" standard for assessing motions to dismiss.  *Norfolk*, 340 F.3d at 613; *Crumpley-Patterson*, 388 F.3d at 590; *see Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) ("[A] complaint should not be dismissed . . . unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").  The Supreme Court retired the *Conley* standard in 2007 because, upon a "literal reading of [it], *a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery*."  *Twombly*, 550 U.S. at 561 (emphasis added) (quotation marks omitted); *see also Blood v. Givaudan Flavors Corp.*, 606 F. Supp. 2d 972, 982 (N.D. Iowa

## CONCLUSION

Assuming all of Plaintiff's well-pled allegations to be true and drawing every reasonable inference in his favor, Count V of Plaintiff's Third Amended Complaint fails to allege a *Monell* claim for municipal liability under § 1983.  Despite multiple opportunities to amend, Plaintiff "has shown persistent pleading failures," *Miles v. Simmons Univ.*, 514 F. Supp. 3d 1070, 1080 (D. Minn. 2021), and Count V will therefore be dismissed with prejudice.  *See* Fed. R. Civ. Proc. 41(b); *Orr v. Clements*, 688 F.3d 463, 465 (8th Cir. 2012) ("[T]here is a presumption that a dismissal under Rule 12(b)(6) is a judgment on the merits made with prejudice . . . [unless] the court so specifies.").

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Count V (Doc. 66) is **GRANTED**.

An appropriate Order of Dismissal shall accompany this Memorandum and Order.

Dated this 21st day of December, 2021.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE

---

2009) ("[I]t is now understood that complainants have an obligation to provide the grounds of their entitlement to relief, which requires more than labels and conclusions . . . . The complaint must allege facts, which taken as true, raise more than a speculative right to relief . . . .") (internal quotation marks and citations omitted).

Under the *Twombly-Iqbal* pleading standard, a plaintiff is entitled to the presumption that every well-pled factual allegation in his complaint is true.  But once that presumption is granted, his "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Thus, although Plaintiff is not required to *prove* his facts at this stage, he must at least allege them. *See id.* at 556 ("Asking for plausible grounds to infer [a claim] does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [that claim]."). "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 678 (quoting Fed. R. Civ. Proc. 8(a)(2)).

13