UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LOUIS NAES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:19-cv-02132-SEP |
| | ) |
| THE CITY OF ST. LOUIS, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Before the Court is the City of St. Louis's Motion to Alter Judgment. Doc. 140. The matter is fully briefed and ready for disposition. For the reasons set forth below, the Motion is granted.

### FACTS AND BACKGROUND

Plaintiff's Third Amended Complaint brought four counts: Counts I, II, and III against the City, and Count IV against individual defendants Angela Coonce and John Hayden. Doc. 59. On March 31, 2022, this Court granted summary judgment for Coonce and Hayden on Count IV, summary judgment for the City on Count III, and partial summary judgment for the City on Counts I and II. Doc. 137.[1] Plaintiff's Title VII claims against the City in Counts I and II survived, in part, because the Court found that there was a genuine dispute over whether there was a materially significant difference between Plaintiff's position as an Animal Abuse Investigator and his position in First District, such that the difference created an adverse employment action. Doc. 137 at 7-12.

On April 4, 2022, the Eighth Circuit issued a decision in *Muldrow v. City of St. Louis et al.*, — F.4th —, 2022 WL 995363 (8th Cir. Apr. 4, 2022). The following day, the City filed this Motion arguing that *Muldrow* created an intervening change in controlling law that was dispositive of Plaintiff's claims, and that pursuant to Federal Rule of Civil Procedure 60(b), this Court should reconsider its summary judgment order and grant judgment in favor of the City on the two remaining claims in Counts I and II. Doc. 141 (City's Memorandum in

---

[1] The Court incorporates the facts recited in that Order. *See* Doc. 137 at 1-4.

1

Support) at 1.  On April 8th, Plaintiff filed his Opposition, arguing that this case was more comparable to *Bonenberger v. St. Louis Metropolitan Police Dep't*, 810 F.3d 1103 (8th Cir. 2016), and that *Muldrow* is not dispositive of his claims.  Doc. 144 (Plaintiff's Memorandum in Opposition).

## LEGAL STANDARD

Courts may reconsider a non-final summary judgment order on a Rule 60(b) motion. *See Nelson v. Am. Home Assur. Co.*, 702 F.3d 1038, 1043 (8th Cir. 2012).  "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding . . . ."  Fed. R. Civ. P. 60(b).  If relief is not obtainable under Rules 60(b)(1) through (5), the Court may grant relief under Rule 60(b)(6) for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6); *see City of Duluth v. Fond du Lac Band of Lake Superior Chippewa*, 702 F.3d 1147, 1154 (8th Cir. 2013) (citing *Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847, 863 (1988)).  "A change in governing law can represent so significant an alteration in circumstances as to justify both prospective and retrospective relief from the obligations of a court order."  *City of Duluth*, 702 F.3d at 1154; *see also Thomas v. Newton*, 2009 WL 111682, at *1 (E.D. Mo. Jan 15, 2009) ("reconsideration of the denial of a motion for summary judgment is appropriate . . . where there has been a significant change in the law or facts since the submission of the issues to the Court") (citation omitted).

## DISCUSSION

### I.      Count I:  Involuntary Transfer

In Count I, Plaintiff alleged that the City discriminated against him when it involuntarily transferred him from his position as the Animal Abuse Investigator in the specialized Nuisance Unit to a patrolman position in First District.  Doc. 137 at 5.  The City argues that, after *Muldrow*, there is no longer any question as to whether Plaintiff's circumstances gave rise to an actionable adverse employment action.  Doc. 141 at 2.  The Court agrees.

On summary judgment, this Court found that, when Plaintiff was involuntarily transferred, the evidence he produced of changes in his working conditions and loss of prestige raised a genuine issue of material fact over whether his transfer was an adverse employment action.  Doc. 137 at 12.  Specifically, Plaintiff went from working as a detective to working as a patrol officer; from working weekdays, 7:00 AM to 3:30 PM, to working a

2

rotating day and night schedule that included weekends; and from a position that afforded him an office at headquarters, occasional assignments from the Chief of Police, and local news coverage, to a position with none of the above. *Id.* at 8-12.

In *Muldrow*, Sgt. Jatonya Clayborn Muldrow sued the City of St. Louis for gender discrimination after she was involuntarily transferred from the Intelligence Division to Fifth District. *Muldrow*, 2022 WL 995363, at *1. As a detective in Intelligence, Muldrow worked on public corruption and human trafficking cases, served as the head of the Gun Crimes Unit, and oversaw the Gang Unit. *Id.* Muldrow had a "traditional" Monday through Friday schedule, working from 8:00 AM or 9:00 AM to 4:00 PM or 5:00 PM. *Id.* Due to her position in Intelligence, Muldrow was deputized by the Federal Bureau of Investigation (FBI) as a Task Force Officer (TFO) for the FBI Human Trafficking Unit. *Id.* As a TFO, Muldrow had the same privileges as an FBI agent, including access to FBI field offices, the opportunity to work in plain clothes, access to an unmarked FBI vehicle, authority to conduct human trafficking investigations outside of the jurisdiction of the City of St. Louis, and the opportunity to earn up to $17,500 in annual overtime pay. *Id.*

In 2017, Capt. Michael Deeba replaced Capt. Angela Coonce as the Commander of Intelligence and transferred Muldrow to Fifth District. *Muldrow*, 2022 WL 995363, at *1*. In Fifth District, Muldrow was responsible for administrative upkeep and supervising patrol officers. *Id.* She also reviewed and approved arrests and responded to "Code 1" calls for crimes such as homicides, robberies, and assaults. *Id.* Muldrow was required to wear a police uniform, work a rotating schedule that included weekends, drive a marked police vehicle, and work within a controlled patrol area. *Id.* Muldrow's salary and rank remained the same, but her TFO status was revoked, and she was no longer eligible for the $17,500 in FBI overtime pay. *Id.*

Muldrow argued that her transfer constituted an adverse employment action because her Fifth District position was more administrative and less prestigious than her position in Intelligence. *Muldrow*, 2022 WL 995363, at *4. The Eighth Circuit disagreed and held that her transfer was not an adverse employment action. *Id.* at *7. In so doing, the Court held that "absent proof of harm" resulting from an employee's reassignment, there is no adverse employment action. *Id.* at *4. The Court noted that Muldrow's transfer did not result in a change to her title, salary, or benefits; it did not decrease her potential for promotion; and

3

she was still eligible for overtime opportunities but simply chose not to take advantage of those opportunities. *Id.* at *4, *6. The Court also emphasized that "the mere fact that an employee was disallowed from maintaining her preferred schedule, without any indication that she suffered a material disadvantage as a result of the action, does not meet the significant harm standard set forth in *Burlington Northern*." *Id.* at *6 (cleaned up) (citing *Recio v. Creighton Univ.*, 521 F.3d 934, 940 (8th Cir. 2008) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006))). And the Court rejected Muldrow's argument that her Fifth District position was less prestigious than her former position in Intelligence. *Muldrow*, 2022 WL 995363, at *4.

Under *Muldrow*, there is no longer a genuine dispute that Plaintiff's transfer did not constitute an adverse employment action. Like Muldrow, Plaintiff's salary and rank remained the same, *id.*, Doc. 137 at 12, and Plaintiff's altered responsibilities and work schedule are not, in themselves, materially significant disadvantages, *Muldrow*, 2022 WL 995363, at *3 (citing *Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013)). Also like Muldrow, Plaintiff went from investigating specialized cases to working as a patrol officer. Muldrow lost the opportunity to earn $17,500 in FBI overtime; Plaintiff lost the ability to work his cases for overtime. And while Muldrow went from leading the Gun Crime Unit and Gang Unit to supervising patrol officers, Plaintiff provided no evidence that his transfer involved any change in supervisory or leadership duties. Thus far, Plaintiff's case for an adverse employment action is at best equivalent to, and may even be weaker than, Muldrow's.

Plaintiff's only remaining argument is that the Animal Abuse Investigator position was more prestigious than his position in First District. In light of *Muldrow*, that too is insufficient. Plaintiff's prestige argument is based on the difference in overtime opportunities, local news coverage, and his office at headquarters. Doc. 137 at 10-12. Muldrow's difference in overtime opportunities was not sufficient, even though she lost the opportunity to work human trafficking cases with the FBI. *Muldrow*, 2022 WL 995363, at *4. Plaintiff lost only the opportunity to earn overtime by working his own cases after hours or on weekends. Doc. 137 at 9. Moreover, like Muldrow, Plaintiff had overtime opportunities in his new position but chose not to take advantage of them. *See Muldrow*, 2022 WL 995363, at *4; Doc. 137 at 9.

4

Plaintiff's additional evidence of loss of prestige—i.e., the fact that he lost his office at headquarters and that the media had taken note of the Animal Abuse Investigator position—does not meaningfully distinguish this case from *Muldrow*. In evaluating Muldrow's evidence of the benefits of a sought-after transfer—specifically, that "she would have been seen as having a higher profile, been privy to more information, and perhaps been given a laptop or iPad—the Eighth Circuit found that testimony about such benefits "does not explain how or why [she] was harmed by not being awarded the . . . position." *Muldrow*, 2022 WL 995363, at *5. Plaintiff has produced no more evidence of "how or why [he] was harmed" than Muldrow did. He concedes that he suffered no decrease in rank or pay, and the record shows that Plaintiff had no potential for promotion because he scored too low on the promotion exam in 2015 and had not participated in the testing process since. Doc. 111 (Plaintiff's Response to Defendant's Statement of Uncontroverted Material Facts) ¶¶ 179-85. He also intended to leave SLMPD in roughly two years, as soon as he was eligible for retirement. Doc. 111 ¶ 188. Plaintiff provided insufficient evidence for a reasonable trier of fact to find that his transfer harmed his post-retirement career prospects. *See* Doc. 137 at 10. And it is clear from the Eighth Circuit's analysis of Muldrow's similar claims that none of Plaintiff's other complaints amounts to "a tangible change in working conditions that produces a material employment disadvantage." *Muldrow*, 2022 WL 995363, at *3 (citing *Clegg v. Ark. Dep't of Corr.*, 496 F.3d 922, 926 (8th Cir. 2007)).

Plaintiff's efforts to distinguish his case from *Muldrow* and assimilate it to *Bonenberger* are unpersuasive. *See* Doc. 144 at 2. Although there is some similarity between this case and *Bonenberger*, the two cases differ in precisely the same way that the Eighth Circuit found *Bonenberger* and *Muldrow* differ. *See Muldrow*, 2022 WL 995363, at *5. In *Muldrow*, the Eighth Circuit pointed out that Bonenberger had presented "persuasive evidence" that the position for which he was denied a transfer involved significant supervisory duties, offered more contact with command rank officers, and made it "significantly" more likely that he would be promoted to Lieutenant. *Id.* (citing *Bonenberger*, 810 F.3d at 1105, 1108). In *Bonenberger*, the Eight Circuit had found that, combined, those facts "offered a material change in working conditions" that provided "sufficient evidence to support the conclusion that Sgt. Bonenberger suffered an adverse employment action." *Bonenberger*, 810 F.3d at 1108. In *Muldrow*, by contrast, the plaintiff provided testimony

5

that a transfer she was denied would have been "higher profile" and had other advantages, but the Eighth Circuit found that evidence insufficient in the absence of persuasive evidence that "the transfer would have resulted in a material, beneficial change to her employment." *Muldrow*, 2022 WL 995363, at *5.  In particular, the Eighth Circuit noted that Muldrow had admitted that the transfer would not have increased her rank or pay, and that the denial "did not harm her career prospects." *Id.*

Like Bonenberger, Plaintiff here has produced evidence that he lost contact with command rank officers and suffered other undesirable changes in his working conditions as a result of his transfer.  But unlike Bonenberger—and plainly dispositive after *Muldrow*—Plaintiff has not produced evidence that his transfer caused him any actual harm, such as a decrease in rank or pay, or harm to his career prospects.  Thus, following *Muldrow*, the Court cannot find that Plaintiff's evidence is enough for a reasonable trier of fact to find that he suffered an adverse employment action.  *Muldrow*, 2022 WL 995363, at *5.

The City has demonstrated that there is no genuine dispute as to whether Plaintiff's involuntary transfer out of Nuisance constituted an adverse employment action, and it is entitled to judgment as a matter of law as to Plaintiff's Count I.

**II.     Count II:  Denial of Transfer**

In Count II, Plaintiff alleged that the City discriminated against him when it did not rehire him to the Animal Abuse Investigator position. Doc. 137 at 31.  The Court found that Plaintiff had made a prima facie case for failure to promote, which is an adverse employment action.  *See, e.g.*, *McCullough v. Real Foods, Inc.*, 140 F.3d 1123, 1126 (8th Cir. 1998); *see AuBuchon v. Geithner*, 743 F.3d 638, 643 (8th Cir. 2014) ("Unquestionably, failure to promote can constitute an adverse employment action . . . .").  In *Muldrow*, however, the Eighth Circuit explained that, when "determining if denial of a sought-after transfer constitutes an adverse employment action," the Court looks to the same factors that it does when deciding "whether [an] involuntary transfer constitute[s] an adverse employment action." *Muldrow*, 2022 WL 995363, at *5 (evaluating whether the "sought-after transfer would have resulted in a material, beneficial change to [Muldrow's] employment") (quoting *Bonenberger*, 810 F.3d at 1108) (where the plaintiff "applied for" a position and a female employee was hired instead of him, the Court construed the claim as one for "denial of a sought-after transfer")).  Because the transfer Plaintiff sought here was to return to the same position he had previously been

6

transferred out of—the loss of which the Court has found did *not* constitute an adverse employment action as a matter of law—the denial of that transfer likewise cannot constitute an adverse employment action. *See Muldrow*, 2022 WL 995363 at *5.

Thus, for the reasons set forth with respect to Plaintiff's involuntary transfer out of Nuisance, the City has demonstrated that there is no genuine dispute as to whether the denial of his transfer back to Nuisance was an adverse employment action, and the City is entitled to judgment as a matter of law as to Plaintiff's Count II.

## CONCLUSION

Under the Eighth Circuit's recent decision in *Muldrow v. City of St. Louis et al.*, — F.4th —, 2022 WL 995363 (8th Cir. Apr. 4, 2022), the City has shown that there is no genuine dispute of material fact as to whether Plaintiff suffered an adverse employment action, and it is entitled to judgment as a matter of law on Counts I and II.

Accordingly,

**IT IS HEREBY ORDERED** that the City of St. Louis's Motion to Alter Judgment, Doc. [140], is **GRANTED**. The City is entitled to judgment on Counts I and II, the only remaining claims in Plaintiff's Third Amended Complaint.

A separate Order of Judgment shall be issued herewith.

Dated this 15th day of April, 2022.

*[signature]*

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE